UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ZIRIN TAX COMPANY, INC., *d/b/a Steven-Louis Income Tax Centers*; THE HOLTZ GROUP, INC.; STEVEN A. HOLTZ,

*Plaintiffs,*

– against –

UNITED STATES OF AMERICA, *by and through the Commissioner of the Internal Revenue Service,*

*Defendant.*

**MEMORANDUM & ORDER**
24-cv-01511 (NCM) (MMH)

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Zirin Tax Company Inc., doing business as Steven-Louis Income Tax Centers; the Holtz Group Inc.; and Steven A. Holtz bring this action against defendant United States of America, by and through the Commissioner of the Internal Revenue Service ("IRS"). Before the Court is defendant's motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons stated below, defendant's motion is **GRANTED**.

---

[1] The Court hereinafter refers to defendant's Memorandum in Support of Motion to Dismiss, ECF No. 27, as the "Motion"; plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 28, as the "Opposition"; and defendant's Reply Memorandum in Support of Motion to Dismiss, ECF No. 29, as the "Reply."

1

## BACKGROUND

The Court assumes the parties' familiarity with the facts underlying plaintiffs' claims. *See* Memorandum & Order ("PI Order") 2–6,[2] ECF No. 22; *see also* Memorandum & Order ("R&R Order") 1–3, ECF No. 40. The Court briefly discusses the relevant procedural background.

On February 28, 2024, plaintiffs filed the instant action seeking injunctive relief directing the IRS to set aside its suspension of plaintiffs' electronic filing identification numbers ("EFINs"). Compl. 16, ECF No. 1. Plaintiffs moved for a preliminary injunction the next day. *See* Mot. for Prelim. Inj., ECF No. 3. Following full briefing by both parties and a hearing on plaintiffs' motion, the Court denied plaintiffs' request for preliminary relief after concluding that they "failed to satisfy their burden to make a strong showing of irreparable harm necessary for a preliminary injunction." PI Order 16–17. Defendant moved to dismiss the complaint shortly thereafter for lack of subject matter jurisdiction and for failure to state a claim. *See* Mot. 7–8.

At the same time, plaintiffs sought leave to amend their complaint to add claims for monetary damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against six current or former IRS employees and up to ten "John Does." R&R Order 2. By report and recommendation dated February 16, 2025 ("R&R"), Magistrate Judge Marcia M. Henry recommended denying the motion because plaintiffs' proposed *Bivens* claim would be futile. R&R Order 1, 5. Approximately one month later this Court overruled plaintiffs' objections to the R&R and adopted it in

---

[2] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

2

its entirety after concurring in Judge Henry's conclusion that plaintiffs' proposed *Bivens* claim would be futile. *See* R&R Order 9, 11, 13.

Finally, on July 24, 2025, defendant submitted supplemental authority from a case "involv[ing] identical legal issues" to those raised in its current motion to dismiss. Letter, ECF No. 42 (citing *Manavalan v. United States*, No. 24-cv-01829 (W.D. Wa. July 23, 2025) ("*Manavalan*"), ECF No. 29). There, the district court for the Western District of Washington granted the IRS's motion to dismiss a complaint bringing claims against the IRS for alleged violations of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA") and the Due Process clause of the Fifth Amendment based on the revocation of the plaintiffs' EFINs and expulsion from the IRS's e-file program. *Manavalan*, slip op. at 2–4. The court dismissed the plaintiffs' APA claim after concluding, among other things, that the plaintiffs "d[id] not plausibly allege an APA claim for [the] [p]laintiffs' termination from the e-file program because the complaint does not reveal any factual basis from which to infer that the IRS violated any regulation." *Manavalan*, slip op. at 14. Similarly, the Court dismissed the plaintiffs' due process claim based on its conclusion that the plaintiffs could not "allege a Fifth Amendment violation based upon a property interest in their EFINs because they have no such interest." *Manavalan*, slip op. at 19.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[3] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions

---

[3] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

"probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, the "issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

Pursuant to Rule 12(b)(1), a case is properly dismissed "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Subject matter jurisdiction is "not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

4

## DISCUSSION

### I. Due Process Claim

To sustain a procedural due process claim, plaintiffs must plausibly allege two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001). "[A]n abstract need or desire for the matter at issue, or a unilateral expectation as to its receipt," does not constitute a protected property interest. *Ace Partners, LLC v. Town of East Hartford*, 883 F.3d 190, 195 (2d Cir. 2018) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Instead, plaintiffs must demonstrate "a legitimate claim of entitlement, one created and defined by existing rules or understandings that stem from an independent source[.]" *Id.* Courts "focus on the applicable statute, contract[,] or regulation that purports to establish the benefit" when determining whether a plaintiff has a claim of entitlement. *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994).

Plaintiffs allege two overlapping property interests. First, a property interest in their "ability to e-file tax returns" on behalf of their clients because the ability to e-file "is a *de facto* business license." Compl. ¶ 65. That is, without the ability to e-file, plaintiffs "cannot continue to operate their tax preparation business." Compl. ¶ 65. Second, and relatedly, plaintiffs allege a property interest in their EFINs because EFINs are necessary for tax return preparers like plaintiffs to e-file tax returns. Opp'n 8. Plaintiffs point to 26 U.S.C. § 6011(e)(3) ("Section 6011") as the "independent source" of these property

5

interests. Opp'n 15 (quoting *Ace Partners*, 883 F.3d at 195). Specifically, plaintiffs emphasize that provision's mandate requiring tax return preparers such as plaintiffs to e-file tax returns. Opp'n 15. Plaintiffs argue that this mandate "restrains the IRS's discretion to revoke an EFIN." Opp'n 15. Thus, according to plaintiffs, Section 6011(e)(3) "clarifies that a tax preparer's EFIN is a business license that is subject to constitutional due process protection." Opp'n 15.

Defendant contends that plaintiffs fail to plausibly allege a constitutionally protected property interest. Mot. 19–22. Defendant argues that plaintiffs instead "have a mere unilateral expectation that they will be able to continue filing tax returns electronically[.]" Mot. 19. Defendant further argues that neither the Internal Revenue Code nor IRS guidance creates a "legitimate claim of entitlement" in these circumstances: a tax return preparer under IRS investigation for filing fraudulent returns. Mot. 19. Moreover, defendant references the "broad suitability standards" it uses in determining whether to grant, deny, or revoke EFINs as a factor indicating that there is no constitutionally protected interest. Mot. 20. Specifically, defendant points to IRS Publication 3112 and its provision of a "non-exhaustive list of factors that might result in denial of e-filing privileges," Mot. 20, as confirmation that the IRS retains some degree of discretion over whether to grant an EFIN. And in defendant's view, this discretion "preclude[s] any legitimate claim of entitlement" and "dooms" plaintiff's due process claim. Mot. 20–21. The Court agrees.

When an asserted protected property interest is in a government-issued license or permit, "a legitimate claim of entitlement exists where[,] . . . absent the alleged denial of due process, there is either certainty or a very strong likelihood that the application would have been granted." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504 (2d Cir.

6

2001). Accordingly, a property interest in a license turns on "whether the issuing authority lacks discretion to deny the [license]." *Ace Partners*, 883 F.3d at 195; *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("[E]ntitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met."). Thus, "a constitutionally protected property interest[] exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Ace Partners*, 883 F.3d at 195.

The prevailing guidance governing the IRS's e-file program is set forth in IRS Publication 3112 and Revenue Procedure 2007-40. *See* Compl. ¶ 47; Mot. 12; *see also Manavalan*, slip op. at 4 ("IRS Publication 3112, *IRS e-file Application and Participation*, outlines the IRS's procedures governing its e-file program."); *United States v. Brier*, No. 09-ml-00607, 2010 WL 4510945, at *10 (D.R.I. Nov. 5, 2010) ("EFINs are assigned and regulated in accordance with guidelines described in IRS Revenue Procedure 2007-40."). Publication 3112 details the procedures involved in applying for the e-file program; an applicant must "submit[] an e-file application, meet[] eligibility criteria and . . . pass a suitability check." IRS Pub. 3112, 2018 WL 3977928, at *1 (Jan. 1, 2018). An applicant satisfying these requirements, including passing the suitability check, is accepted to the e-file program, and the IRS assigns the participant an EFIN. *Id.* In addition, even after acceptance to the e-file program, defendant "completes suitability checks regularly" on e-file participants. *Id.* at *21. "[I]f the results of a suitability check indicate that a firm or individual does not meet or adhere to IRS e-file requirements, the IRS may revoke or sanction the Provider from participating in IRS e-file." *Id.*

7

Revenue Procedure 2007-40 ("Revenue Procedure") prescribes the requirements for participating in the IRS e-file program and "is the official set of rules that govern participation in IRS *e-file*." *Id.* at *25; *see* Rev. Proc. 2007-40, 2007-1 C.B. 1488, 2007 WL 1798632 (June 25, 2007); *see also Brier*, 2010 WL 4510945, at *10 ("Participants in the IRS electronic filing program must comply with the provisions of Revenue Procedure 2007-40."). "The IRS revises the revenue procedure as needed." IRS Pub. 3112, 2018 WL 3977928, at *25. In fact, the Revenue Procedure expressly provides that defendant will "from time to time" update the provisions of the Revenue Procedure "and all publications and notices governing IRS *e-file* . . . to reflect changes" to the e-file program. Rev. Proc. 2007-40, 2007 WL 1798632, at *5. Further, the Revenue Procedure states that the IRS "may sanction" a participant in the e-file program for violating any of its provisions or other publications and notices governing e-file. *See id.* at *7.

Most relevant to the issues presented here is defendant's suitability check. In assessing the suitability of an applicant to participate in the e-file program, Publication 3112 expressly states that defendant "may deny an applicant participation in IRS e-file for a variety of reasons." IRS Pub. 3112, 2018 WL 3977928, at *1. Publication 3112 sets out a list of non-exhaustive reasons for denial, some of which—as defendant argues—afford the IRS a degree of discretion. For example, defendant may deny an applicant e-filing privileges for "[d]isreputable conduct or other facts that may adversely impact IRS e-file[.]" *Id.* at *8. Similarly, the IRS may deny an applicant based on "[u]nethical practices in return preparation." *Id.* at *9. Moreover, Publication 3112 states that an applicant may be denied on the same basis that plaintiffs' EFINs were revoked here—the applicant is the subject of "an active IRS criminal investigation." *Id.* at *8; *see also* Mot. 15.

8

Particularly instructive on this score is the Second Circuit's decision in *Ace Partners, LLC v. Town of East Hartford*, 883 F.3d 190 (2d Cir. 2018). The plaintiff there sued the Town of East Harford and its police department and officers for alleged due process violations in connection with the defendants' decision not to renew the plaintiff's pawnbroker and precious metals licenses. *Ace Partners*, 883 F.3d at 191–92. The plaintiff's renewal applications were denied shortly before its licenses expired based on the defendants' belief that "recent occurrences" at the plaintiff's East Hartford location "demonstrate[d] that there exist[ed] cause not to renew." *Id.* Specifically, the defendants were made aware that certain of the plaintiff's employees were in possession of stolen property at the plaintiff's store. *Id.* at 193. Consequently, "[w]ithout the requisite licenses to operate as a pawnbroker or to deal in precious metals, [the plaintiff] closed its East Hartford store." *Id.* at 194.

The plaintiff brought due process claims based on the defendants' denial of its pawnbroker license application and its precious metals license application. *Id.* at 191–92. The district court awarded summary judgment to the defendants for the due process claim based on the pawnbroker license after concluding that Connecticut's pawnbroker licensing statute—"particularly the phrase stating that the chief of police of any city may grant pawnbroker licenses to *suitable persons*"—afforded "sufficient discretion to the licensing authority to preclude [the plaintiff] from establishing a constitutionally protected property interest in the renewal of that license." *Id.* at 194 (emphasis in original). On the other hand, the district court awarded the plaintiff summary judgment for its procedural due process claim based on the precious metals license because it concluded that "[i]n the absence of comparable language in the precious metals licensing

9

statute . . . [the plaintiff] had shown a constitutionally protected property interest in the renewal of that license." *Id.*

The Second Circuit reversed the grant of summary judgment in the plaintiff's favor on appeal after concluding that approval of the plaintiff's precious metals renewal application "was not virtually assured by Connecticut law so as to afford [the plaintiff] the protected property interest necessary for its procedural due process claim." *Id.* at 195. The court first turned to the statutory text of Connecticut's precious metals statute, Conn. Gen. Stat. § 21-100(a), and noted that the statute "plainly contemplate[d] requirements" and afforded police chiefs "virtually unfettered discretion to specify them." *Id.* at 197. For example, the court emphasized the statute's revocation provision providing that licenses could be revoked "for cause," including, "but not . . . limited to, failure to comply with *any requirements for licensure specified by the licensing authority at the time of issuance.*" *Id.* (emphasis in original). The court reasoned that "by virtue of [police chiefs'] authority to specify licensing requirements," the defendants necessarily had broad discretion to deny renewal of the precious metals license application. *Id.* at 198.

Notably, the Second Circuit addressed the plaintiff's argument that the pawnbroker and precious metals licensing schemes were differently situated because the pawnbroker licensing statute contained language stating that police chiefs "may grant pawnbroker licenses to suitable persons." *Id.* at 200. The plaintiff pointed to state court precedent—and the district court's reliance on such precedent—standing for the proposition that "determining an applicant's suitability necessarily requires the issuing agent to exercise judgment and reasoned discretion." *Id.* at 200. In declining to find the absence of such "suitable persons" language in the precious metals statute dispositive, the Second Circuit explained:

10

> We need not here decide whether the authority to specify any requirement for licensure affords discretion that is the functional, if not the precise, equivalent of identifying a person's suitability to hold a license. We conclude only that the former task reaches broadly and requires the exercise of judgment and reasoned discretion as much as the latter.

*Id.* at 201.

Applying these principles here compels the conclusion that defendant has discretion to grant, deny, and revoke participation in its e-file program, and therefore plaintiffs cannot plausibly allege a constitutionally protected property interest. First, IRS guidance expressly states that the IRS "specifies the requirements for . . . participation in IRS e-file," and that "[t]he IRS revises the revenue procedure as needed." IRS Pub. 3112, 2018 WL 3977928, at *25. In other words, the IRS has discretion to deny—or revoke—participation in e-file "by virtue of [its] authority to specify licensing requirements." *Ace Partners*, 883 F.3d at 198.

But even more telling is Publication 3112's inclusion of a "suitable persons" assessment, which "necessarily requires the issuing agent to exercise judgment and reasoned discretion." *Id.* at 200; *see* IRS Pub. 3112, 2018 WL 3977928, at *7 ("[T]he IRS conducts a suitability check on the applicant and on all Principals and Responsible Officials listed on the application."); *see also Manavalan*, slip op. at 17. Indeed, defendant may deny an EFIN application based on a determination, in its discretion, that an applicant has engaged in "disreputable conduct" or was involved in "other facts that may adversely impact IRS e-file[.]" IRS Pub. 3112, 2018 WL 3977928, at *8. Moreover, defendant may deny an application for a reason not articulated in Publication 3112 at all. *See id.* ("The IRS may deny an applicant participation in IRS e-file for a variety of reasons that include *but are not limited to* . . . .") (emphasis added). In the same vein, the IRS

11

"may revoke or sanction" a participant based on the results of defendant's continuous suitability checks. *See id.* at *21. Given the discretion afforded to defendant pursuant to Publication 3112 and the Revenue Procedure, plaintiffs fail to plausibly allege that participation in the IRS's e-file program is "virtually assured" such that it amounts to a constitutionally protected property interest. *Ace Partners*, 883 F.3d at 195; *see also New Page at 63 Main, LLC v. Inc. Vill. of Sag Habor*, 674 F. App'x 23, 26 (2d Cir. 2016) (summary order) (concluding that the plaintiffs "failed to plausibly allege a legitimate claim of entitlement" where they "identified no specific limitations on [the defendant's] discretion, nor . . . presented any persuasive argument that some such limitation was violated").

Plaintiffs' argument that Section 6011(e)(3) "mandate[s]" e-filing for tax preparers such as themselves—and thus constitutes a constitutionally protected business license— does not move the needle. *See* Opp'n 15. Plaintiffs fail to explain how a change in filing requirements for certain tax preparers simultaneously confers a legitimate claim of entitlement. Indeed, most government licensing regimes necessarily mandate who can participate in certain activity and on what terms; a protected property interest in a business license arises from the issuing authority's lack of discretion to deny or revoke the license, not simply because the license is necessary to participate in a particular business.[4] *See, e.g., Ace Partners*, 883 F.3d at 194 (finding no property interest even where "[w]ithout the requisite licenses to operate as a pawnbroker or to deal in precious metals, [the plaintiff] closed its East Hartford store"); *Martinez v. Town of Clarkstown*,

---

[4] For this reason, plaintiffs' attempt to distinguish *Ace Partners* and other cases in which courts declined to find constitutionally property rights because, in those contexts, "there was no statute equivalent to § 6011(e)(3)," Opp'n 17, is unavailing.

12

No. 23-cv-05364, 2024 WL 4124717, at *1, 3 (S.D.N.Y. Sept. 9, 2024) (declining to find property interest in short-term rental permit where law required residents to "obtain a permit in order to use their housing or dwelling unit as a short-term rental" because "[t]he statute included various reasons why a permit could be denied and a non-exhaustive list of reasons that a permit could be revoked"); *accord Cullen v. Mello*, No. 23-413, 2024 WL 1904571, at *1 (2d Cir. May 1, 2024) (summary order) ("[I]nterests . . . in existing licenses revokable in the state's discretion, cannot support a due process claim.").

To the extent plaintiffs suggest that they have a protected interest in access to the e-file program because it is necessary to operate their business, and, by extension, their right to be tax preparers, *see* Compl. ¶ 65, the Court is unconvinced. Whether plaintiffs label their constitutionally protected interest as a property interest in their EFINs or a liberty interest in their right to occupational choice, they fail to plausibly allege a constitutional violation here. As one court has explained:

> Whether this case is viewed as alleging deprivation of a liberty or property interest, it is clear that the interest alleged to have been interfered with is the interest in pursuing a chosen occupation. As the foregoing cases make clear, that right is not absolute, and an unconstitutional deprivation does not occur any time the State regulates a profession. Instead, it is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection.

*Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009).

That is, the Due Process Clause's protection of occupational choice is not without limit. *See Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) ("[T]his Court has indicated that the liberty component of the . . . Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."). This protection of the right of

13

occupational choice is only afforded "when a plaintiff is completely prohibited from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019). Therefore, plaintiffs must "allege facts suggesting that . . . defendant's conduct has operated as a complete prohibition on [their] ability to practice [their] chosen profession." *Id.* at 102–03.

Plaintiffs fail to allege those facts here. On the contrary, plaintiffs concede that they can continue in the tax preparation business—albeit through more burdensome means—even without the ability to e-file: filing returns by mail. *See* Opp'n 10 ("SL Tax maintains the ability to file its customers' returns by mail during the EFIN suspension."). In fact, it appears that plaintiffs have done exactly that during the pendency of this litigation. Mot. 23 n.8 (recalling plaintiffs' principal's testimony at hearing on preliminary injunction "that they had been able to file hundreds of paper 2023 federal income tax returns for their clients . . . after their EFINs were suspended"). And although plaintiffs allege that electronic filing is required for tax preparers such as themselves, Compl. ¶ 13, "the IRS may provide administrative exceptions from the e-filing requirement as the IRS determines necessary to promote effective and efficient tax administration." *Manavalan*, slip op. at 18 (quoting 26 C.F.R. § 301.6011-7(c)(2)). Therefore, plaintiffs fail to plausibly allege that suspension from the e-filing program "completely prohibits them from practicing their chosen profession." *Id.*

\*   \*   \*

In sum, the Court concludes that plaintiffs fail to plausibly plead a constitutionally protected interest in their EFINs and participation in the IRS e-file program. Accordingly, plaintiffs cannot state a due process claim, and defendant's motion to dismiss that claim

14

must be granted.[5] *See Manavalan*, slip op. at 19 ("Plaintiffs cannot allege a Fifth Amendment violation based upon a property interest in their EFINs because they have no such interest."); *see also Sabat v. I.R.S.*, No. 99-cv-01751, 2000 WL 1202086, at *4 (W.D. Pa. Mar. 16, 2000) ("[P]laintiff has failed to establish a constitutionally protected liberty or property interest in participating in the IRS electronic filing program.").

## II.   APA Claim

Although plaintiffs have not plausibly alleged a property interest in their EFINs, the IRS was still required, pursuant to the APA, to administer its e-file program in compliance with its own rules and regulations. *See Blassingame v. Sec'y of the Navy*, 866 F.2d 556, 560 (2d Cir. 1989) ("It is axiomatic that an agency of the government must scrupulously observe its own rules, regulations, and procedures."); *accord N.Y. State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1311 (2d Cir. 1994) (explaining that states must "administer licensing schemes fairly" even when "[t]he scope of the license and the very existence of the license are not guaranteed by the Due Process Clause"). Pursuant to the APA, "an agency may not act in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Thompson v. United States*, 795 F. App'x 15, 19 (2d Cir. 2019) (summary order) (quoting 5 U.S.C. § 706(2)). Consistent with this requirement, agencies must adhere to their own rules, regulations, and procedures. *See N.B. v. United States*, 552 F. Supp. 3d 387, 398 (E.D.N.Y. 2021) ("[A]n agency action may be arbitrary and capricious if they fail to follow their own procedures and

---

[5]   Because plaintiffs fail to plausibly plead a protected property interest, the Court does not address the other elements of plaintiffs' due process claim. *See Green v. Mills*, No. 05-cv-10144, 2006 WL 8461743, at *3 (S.D.N.Y. Jan. 6, 2006) ("Since plaintiff does not have a property interest at stake, we need not consider the other two elements of the due process claim.").

regulations."); *see also N.Y. & Atl. Ry. Co. v. Surface Transp. Bd.*, 635 F.3d 66, 71 (2d Cir. 2011) ("An agency also acts in an arbitrary and capricious manner if the agency departs from its own precedent without a reasoned explanation.").

Plaintiffs contend that the IRS "failed to follow its own procedures" and, in doing so, "violated the APA." Opp'n 23–24. Specifically, plaintiffs argue that defendant's notice informing plaintiffs that their EFINs were being revoked "was illusory, and wholly inadequate to apprise [p]laintiffs of the specific alleged conduct that served as grounds for the IRS to revoke the EFINs."[6] Opp'n 23–24. Although the sanction notice informed plaintiffs that their EFINs were revoked because a "[c]riminal [i]nvestigation ha[d] determined that fraudulent returns ha[d] been filed," Compl. ¶ 68, that was insufficient, in plaintiffs' view, to "alert" them "to the actual alleged conduct that [wa]s the reason for the suspension[,]" Opp'n 24. And according to plaintiffs, the inadequacy of the notice

---

[6] Plaintiffs' complaint advances a different basis on which the IRS allegedly failed to follow its own procedures: "issu[ing] an immediate suspension in the absence of exigent circumstances, or manipulat[ing] . . . procedure[s] to create the appearance of an exigency." Compl. ¶ 54. However, this theory goes largely unaddressed in plaintiffs' Opposition, despite defendant's arguments that "EFIN suspensions are committed to agency discretion by law," Mot. 10, and that the alleged "unwritten exigency requirement" has no support in IRS regulations or law, Mot. 16. Indeed, plaintiffs' Opposition makes no reference to the alleged "exigency" requirement, and they appear to concede that EFIN suspension decisions are outside the scope of judicial review. *See* Opp'n 23; *see also* Reply 13–14 ("[A] core allegation from [plaintiffs'] complaint—that the investigators manipulated IRS procedures by suspending their EFINs in the middle of the return filing season despite no exigency requiring urgent action[] is barely mentioned in their brief."). Therefore, this theory is properly deemed abandoned. *See Brown v. Kellogg Sales Co.*, No. 20-cv-07283, 2022 WL 992627, at *5 (S.D.N.Y. Mar. 31, 2022). And in any event, even if the theory was not abandoned—and assuming without deciding that the timing of EFIN suspensions is not immune from judicial review—this theory would still fail to state a claim because plaintiffs point to no rule, regulation, or procedure imposing an "exigency" requirement on immediate EFIN suspensions. *See* IRS Pub. 3112, 2018 WL 3977928, at *22 ("In certain circumstances, the IRS can immediately suspend or expel a Provider, Principal or Responsible Official without warning or notice.").

16

turned the IRS's administrative appeal process "into a mere sham." Opp'n 24. Plaintiffs assert that the inadequacy of the notice "vitiated" their appeal rights and prevented them from meaningfully availling themselves of the appeals process provided by the IRS's own procedures. Opp'n 24–25.

Defendant responds that plaintiffs fail to plausibly allege that the IRS did not follow its own procedures.[7] Reply 13–14. In fact, defendant argues that plaintiffs "never specify which of its procedures the IRS supposedly violated" at all. Reply 13. To the extent that the notice only identified fraudulent returns as the basis for the suspension—and did not specifically disclose an "active IRS criminal investigation"—defendant argues that "[t]his is a distinction without a difference." Reply 14. Defendant notes that (1) filing fraudulent returns is a form of criminal conduct; (2) one of the purposes of an IRS criminal investigation is to find fraudulent returns; and (3) "[t]he [suspension] notice specifically referenced an active investigation." Reply 14.

At the outset, the Court notes that plaintiffs' arguments as to the sufficiency of the notice they received—including the notice's alleged "lack of [] particularity," Opp'n 20—more properly bear on plaintiffs' Due Process claim. Indeed, plaintiffs acknowledge that their arguments about notice are based on the "well-established concept in constitutional due process jurisprudence[.]" Opp'n 24. But as explained above, "[b]ecause the plaintiffs have not pointed to any protected liberty or property interest to which they were entitled, they were not entitled to notice and an opportunity to be heard." *Ostrom v. O'Hare*, 160

---

[7] Defendant initially moved for dismissal of plaintiffs' APA claim pursuant to Rule 12(b)(1) on the basis that the Court lacks jurisdiction because "governing law commits the decision to suspend a return preparer's EFIN completely to the IRS's discretion." Mot. 7. However, as explained above, plaintiffs appear to concede that EFIN suspension decisions are committed to agency review. *See* Opp'n 23. Accordingly, the Court does not address defendant's argument that the Court lacks jurisdiction over plaintiffs' APA claim.

17

F. Supp. 2d 486, 499 (E.D.N.Y. 2001); *see also Perez v. City of New York*, No. 97-cv-04162, 1997 WL 742536, at *2 (S.D.N.Y. Dec. 2, 1997) ("[T]o the extent that plaintiff alleges that his procedural due process rights were violated because he was not given notice of the reasons for the [c]ity's decision, the short answer is that he is not entitled to notice and an opportunity to be heard unless he has a protected interest, and . . . no such interest is created for him by this statute.").

In any event, plaintiffs' APA claim fails because they do not plausibly allege that the IRS failed to follow its own procedures. On the contrary, plaintiffs' allegations support the reasonable inference that defendant did follow its procedures with respect to revoking an e-file program participant's EFIN: informing plaintiffs of the sanction. *See* IRS Pub. 3112, 2018 WL 3977928, at *21–22 ("Violations of IRS e-file requirements may result in warning or sanctioning . . . . In most circumstances, a sanction is effective 30 days after the date of the letter *informing of the sanction.*") (emphasis added). Plaintiffs' suggestion that the existence of an appeal process implied that defendant was required to provide notice "sufficient to alert" plaintiffs of the "misconduct with which [they were] being charged," is misplaced. Opp'n 24 (quoting *Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 176 (E.D.N.Y. 1998)). Plaintiffs do not point to any rule or regulation prescribing the level of detail the IRS must include in a sanction notice concerning the reason for the sanction. *See generally* Compl. Plaintiffs argue that this is not fatal to their claim because they "have guaranteed appeal rights under IRS procedures" which "necessarily means that they must receive notice that is sufficient to allow them to answer the charges against them." Opp'n 25–26. This argument is without merit.

First, plaintiffs supply no authority for the proposition that the existence of an administrative appeals process necessarily imposes additional requirements as to the

18

sufficiency of notice an agency must provide, particularly where—as here—the agency itself has not promulgated requirements as to notice. *See* Opp'n 26. The Court thus declines to imply additional requirements here. *See Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) ("[C]ourts are without power to impose procedures on agencies that are not mandated by the Administrative Procedure Act or by other statute or regulation."); *see also Singh v. Bondi*, 139 F.4th 189, 201 (2d Cir. 2025) ("It is well established that a reviewing court is generally not free to impose additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel."); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015) ("Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them.").

To that end, plaintiffs do not allege that they were unable to avail themselves of the IRS's administrative appeals process. Rather, plaintiffs allege only that they were unable to "meaningfully" do so because of the "vague notice" they received. Opp'n 24–25. But an APA claim requires plausible allegations that a defendant "irrational[ly] depart[ed]" from its own established policies and rules, not simply that a plaintiff was dissatisfied with how the agency carried out such policies and rules. *Yafai v. Cuccinelli*, No. 20-cv-02932, 2020 WL 2836975, at *4 (S.D.N.Y. June 1, 2020); *see also Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) ("The APA is merely a procedural vehicle for review of agency action; it does not confer a substantive right to be free from arbitrary agency action."). And plaintiffs do not—and it would seem cannot—allege that the sanction notice they received amounted to an irrational departure from other sanction notices issued by the IRS. *See, e.g., Manavalan*, slip op. at 3 (noting that IRS sanction notice "explained the basis for

19

expulsion as follows . . . Criminal investigation has determined that fraudulent returns have been filed utilizing the EFIN(s) noted above. Subsequently, the EFIN(s) will be revoked, and the related individual and business will be expelled from the IRS e-file program").

Therefore, plaintiffs fail to state an APA claim based on the IRS's alleged failure to follow its own procedures "because the complaint does not reveal any factual basis from which to infer that the IRS violated any regulation." *Id*. at 14. Accordingly, defendant's motion to dismiss this claim must be granted.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. Plaintiffs' complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

                                             /s/ Natasha C. Merle
                                             NATASHA C. MERLE
                                             United States District Judge

Dated:       October 15, 2025
               Brooklyn, New York